SOUTHERN PACIFIC COMPANY V. J. F. MILNER.

Decided March 13, 1907.

**Mental Suffering.**

For the mere prolongation of mental suffering a recovery is not allowed.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Beall & Kemp,* for appellant.—The court erred in refusing the defendant's special charge, as follows: "Gentlemen of the jury, the undisputed evidence shows that at the time plaintiff's wife was expecting her mother from Los Angeles, she was suffering physically and mentally from sickness, which required a surgical operation, and you are charged that plaintiff can not recover for any increase of mental anguish his said wife may have endured, if any, on account of her mother's delay in reaching El Paso." Western U. Tel. Co. v. Giffin, 93 Texas, 530; Rowell v. Western U. Tel. Co., 75 Texas, 26; McCarthy v. Western U. Tel. Co., 56 S. W. Rep., 568.

*S. N. Russell* and *A. S. Thurmond,* for appellee.—Defendant acting by and through its agent in El Paso having contracted and agreed with plaintiff, for a valuable consideration, to deliver, by telegraph, to Mrs. Bridge, plaintiff's wife's mother, in Los Angeles, transportation from Los Angeles to El Paso, on a day certain, is liable in damages to plaintiff for the mental pain and suffering experienced by his sick wife on account of her mother's delay in reaching her occasioned by its failure to deliver the transportation in accordance with its contract. Hale v. Bonner, 82 Texas, 33; Western U. Tel. Co. v. Simpson, 73 Texas, 422; Stuart v. Western U. Tel. Co., 66 Texas, 580; Western U. Tel. Co. v. Cooper, 71 Texas, 511.

JAMES, CHIEF JUSTICE.—Plaintiff J. F. Milner, husband of Maggie G. Milner, alleged in substance that his wife was in a dangerous condition of health and it became imperative that she should undergo a surgical operation without delay; that her physicians came to this conclusion at ten o'clock a. m. on June 28, 1902, that his wife, fearing that she would not survive the operation was very anxious that her mother, Mrs. Bridges, then in Los Angeles, Cal., should come to her in order that she might see her mother before the operation was performed and also in order that her mother might be with her children, one about seven years old and the other about three years old, during the time that she might be in the hospital, and, also, to console and look after the children in the event of the operation proving fatal; that her physicians, when informed of her desire for her mother, consented to postpone the operation until Tuesday, the 1st of July, 1902; that plaintiff immediately thereafter—on the 28th of June, 1902, at about one o'clock p. m.—went to the defendant's office in El Paso and informed the defendant's agent that he desired the presence of his wife's mother in El Paso as soon as possible and explained the circumstances to the agent and impressed upon him the

necessity of his wife's mother getting to El Paso from Los Angeles as soon as possible, and that the agent assured plaintiff that he could, in El Paso, secure transportation for his wife's mother from Los Angeles to El Paso, in plenty of time for her to arrive in El Paso on the following Monday; that thereupon plaintiff paid the agent twenty-five ($25) dollars for Mrs. Bridge's transportation from Los Angeles to El Paso and then and there agreed and contracted with the agent on behalf of the defendant for a ticket to be delivered to Mrs. Bridges at Los Angeles for her transportation to El Paso; that defendant failed to carry out this contract and did not deliver the ticket to Mrs. Bridge until Tuesday, the 1st day of July, 1902; that the ticket could have been delivered by the use of due diligence to Mrs. Bridge in Los Angeles on Saturday, the 28th day of June, 1902, the day on which the plaintiff was assured by the defendant's agent that it would be delivered to her, in which event, she could have left Los Angeles on Sunday, the 29th of June, 1902, and would have reached El Paso, as plaintiff expected her to do, not later than Monday, the 30th, the day before that set by the surgeons for the surgical operation; that plaintiff's wife was unwilling to undergo the operation until the arrival of her mother and her physicians decided it would be best for their patient for her mother to be present, and again postponed the operation until July 7, 1902; that during the interim between July 1, 1902, and the date of the arrival of his wife's mother—Tuesday, July 1, 1902, being the date fixed for the operation and on which day it would have been performed but for the defendant's failure to furnish Mrs. Bridge the transportation—plaintiff's wife, on account of the postponement, suffered great physical and mental pain and worry and anguish, and her condition on account thereof became worse and of such a character that it was concluded by her physicians best that the operation should be further postponed; and by reason of the complications that arose in the condition of plaintiff's wife's illness, subsequent to the date when the operation was first to have been performed, and plaintiff says that complications in his wife's illness did arise after the failure of her mother to arrive which did necessitate a postponement of the operation, and that during the time of postponement of the operation plaintiff's wife's physical suffering and illness became worse and her physical as well as mental suffering was increased thereby, that said operation was to have been performed as alleged for the removal of the foetus and was finally performed for that purpose—and that from the time when the operation should have been performed to the time when Mrs. Bridge arrived, and until the operation was performed on account of the diseased foetus, etc.—plaintiff's wife's physical suffering and pain was greatly increased and she suffered on account thereof great mental anguish which increased an additional physical pain and mental anguish she would not have suffered had the operation been performed as it would have been had Mrs. Bridge arrived as was expected, at the time the operation was first to have been performed, to wit, in July 1, 1902.

The defendant's answer consisted of a general demurrer, four special demurrers, plea of general denial and not guilty and two special pleas to the effect that it never made any such contract with the plaintiff as that set up by him and that if any agent made any such contract, or agreement, he acted without authority and beyond the scope of his em-

ployment; and further, that if, in fact, it had any agreement or understanding with the plaintiff in reference to the transportation of Mrs. Bridge from Los Angeles to El Paso, there was no agreement that it should be furnished, or that she should be carried to destination, in any certain time, or for any particular purpose or object, but, that she was only to be furnished with transportation and carried safely to destination and this the defendant did with usual dispatch and care. There was a verdict for $350.

The trial judge overruled demurrers and submitted the case upon the theory, 1st. That the undisputed evidence showed that defendant's agent at El Paso had authority to contract for the delivery of transportation to Mrs. Bridges at Los Angeles, but not to contract that such transportation would be furnished at any given time. 2d. That the contract was in legal effect a contract to notify Mrs. Bridges and afford her transportation from Los Angeles to El Paso within a reasonable time and that if there was negligence in this respect which delayed her reaching El Paso, defendant was liable for mental anguish caused plaintiff's wife by such delay. The law applicable to cases in which telegraph companies fail in their contracts to deliver messages, was applied by the court in this case. In respect to the matters dealt with by the first five assignments we think the court ruled correctly. Likewise as to the matters referred to in the eighth, tenth and eleventh assignments.

The seventh assignment is that the court erred in refusing to instruct peremptorily in favor of the defendant. And the ninth is that the court refused the following charge: "The undisputed evidence shows that at the time plaintiff's wife was expecting her mother from Los Angeles she was suffering physically and mentally from sickness which required a surgical operation, and you are charged that plaintiff can not recover for any increase of mental anguish his wife may have endured, if any, on account of her mother's delay in reaching El Paso." The twelfth assignment complains that the court erred in refusing a new trial among other grounds, because the recovery in this case was solely and entirely for mental anguish alleged to have resulted from a breach of a contract and was for the alleged prolongation or increase of mental anxiety and suffering on the part of Mrs. Milner.

Any error upon this trial would in our opinion consist in what is involved in the above assignments, and whether or not the mental distress for which a recovery has been had, was caused by negligent delay of the defendant, or arose from other causes, and the delay complained of merely caused a prolongation of that condition of mind, depends upon the state of the evidence.

An examination of the testimony has brought us to the conclusion that it clearly appears that the mental suffering of plaintiff's wife because her mother was not there, existed before the time her mother was expected to be there and from causes for which defendant was not responsible, and that her delay in reaching there simply caused a continuation of that condition of mind.

It appears without contradiction that plaintiff made the arrangements with defendant's agent at El Paso, about noon of June 28. We will assume, as appellee contends, that if due diligence had been used by

defendant she would have left Los Angeles the next day and would have arrived in El Paso in the afternoon of the 30th. She in fact arrived about six o'clock of the afternoon of July 2d. It appears from plaintiff's testimony that as he was about to go to the train for the purpose of meeting her, he received a telegram from her stating that her transportation had not come. The testimony leaves no doubt as to the fact that previous to this time plaintiff's wife had been taken to the hospital, suffering not only physical, but also mental distress because her mother was not there to be with her children and because she feared she would die before her mother arrived.

When removed to the hospital on the 30th her condition was such that she had to be carried on a stretcher. Plaintiff testified: "At the time my wife's mother arrived my wife had a high fever and there had complications set up. My wife suffered terrible agony, then we removed her to the hospital and there Dr. Stevenson and Dr. Vilas both advised that it would not be safe (the operation) until they could *relay* the fever; that this was the reason the operation (which was to have taken place on July 1) was delayed until the 7th and that that condition was disclosed before Mrs. Bridges arrived. The operation was to be performed on Tuesday (July 1). She got here on the next day. In the meantime the physician and surgeon had concluded the operation had better be postponed for nearly a week longer." If this was true, the operation was postponed for said reasons on the 30th of June and before Mrs. Bridges arrived.

Mrs. Milner herself testified: "My physical pain and suffering was more after the 1st of July and the pain increased. I realized this from the fact that prior to July 1 I could remain up and out of bed and bear the pain which after that time the pain was such as to render me almost unable to realize what I was doing." That this referred not to July 1, but a time prior thereto (June 30), is shown by the fact that on June 30 she had been taken from the hotel to the hospital on a stretcher in the condition above described by plaintiff, consequently it must have been the 30th and before the mother arrived when she was in the condition she described. She proceeded in her testimony: "I did suffer mental anguish and worry almost as great as my physical pain because there was no one to be with my children and I was afraid I might die before my mother arrived." This evidently referred to the same time to which she assigned her physical suffering.

There is no evidence which we find by which it was made to appear that the mental suffering she had before her mother was to arrive and before any notification came that her mother could not arrive in the afternoon of the 30th, was intensified by her not arriving at the time she was expected. No doubt such suffering would have been relieved had her mother arrived at the expected time, and was relieved when she did arrive. The delay naturally prolonged it, but for mere prolongation of mental suffering a recovery is not allowed. (Western U. Tel. Co. v. Giffin, 93 Texas, 530.)

It seems to us therefore that her mental distress on account of her mother's absence originated and existed from causes independent of defendant's delay in performing its contract, and hence from causes for which defendant was not responsible.

The case appears to have been fully developed, and our conclusion is that the judgment should be reversed and judgment rendered here in favor of appellant.

*Reversed and rendered.*